Good morning, Counsel. Good morning, Your Honors, and may it please the Court. Melissa Liu, representing the United States. The only issue in this appeal is whether or not Idaho robbery counts as a crime of violence under 4B 1.2 of the 2015 sentencing guidelines, and it does under the enumerated offenses analysis where courts apply Taylor and compare the crime of conviction to the generic definition of the enumerated offense to figure out whether there's a categorical match. In Becerra-Lopez, this court did just that with California robbery, which is facially identical to Idaho robbery, and concluded that California robbery was a crime of violence under 2L 1.2, which is an analogous guideline to 4B 1.2 at issue in this case. Now importantly, both guidelines enumerate robbery and extortion as crimes of violence. So if we look at the Idaho robbery statute, it's a match for the definition of generic robbery except that it does criminalize conduct involving injury and threats to property. Now similar to what the court did in Becerra-Lopez, we can look at both robbery and extortion, and so that piece of Idaho robbery that's too broad for just generic robbery does fall within generic extortion. So isn't that why we should be concerned about the change to the definition of extortion? The change to the definition of extortion was promulgated in the 2016 guidelines, which are not at issue in this appeal. Why are they not at issue? Because the district court sentenced the defendant under the 2015 guidelines. I mean, I struggled. I've looked at this. Among other things, the district court adopted the pre-sentencing report, which used the 2016 guidelines, and ordinarily you use the guidelines in effect at the time of sentencing unless there's an ex post facto effect. I understand there was a lot of discussion about the 2015 guidelines, and there are reasons why a defendant might have encouraged that because it might have given a legal argument, but in the end, as I've gone through it, and as the district court really tried to struggle with this issue, I didn't come out at the end having a clear sense of which set of guidelines was actually applied. Can you point me to something that answers that question? Yes, well, I think the clearest indication that the district court applied 2015 and not 2016 is that the court did not consider that amended definition that was added in the 2016 guidelines. Well, did anybody know about it? Did anybody ask him to? No one asked him to, but I think that is the clearest indication because if the court had actually applied 2016, it would have looked at that amended definition. Well, if somebody had pointed it out, my sense was that nobody in the room was conscious of that particular change. I can't speak for what the court was. You were lucky enough not to be in the room. We certainly missed it, and we acknowledge that, but I don't think there's any... Well, and it's a sticky area. We're not trying to throw stones. This was a very sticky area, and as you said, even Vercero Lopez, by relying on extortion, it's a little bit of a brain teaser, and I understand these statutes, of course, they're identical. They're verbatim. Yes. But the district court was concerned that maybe Idaho had interpreted it differently anyway, and I think you have a strong argument on that point. Yes. But there's still this concern about 2015 or 2016. I think the district court does pretty clearly adopt the amended PSR, and that relies on 2016, right? Yes, but I do think the strongest indication that the court didn't actually apply 2016 is that the court did not consider that new extortion definition that only appears... Well, if you weren't aware of it, why should we be so confident that the court was so aware of it? I mean, I'm willing to stipulate the judges know everything, but it looks like... I mean, it was never mentioned. It's something that likely would have been brought up if people were conscious of it, so why does that really tell us that the judge was mindful when he decided, no, I'm going to disregard that and apply 2015? Well, I think if you look at the fact that the court didn't consider that amended extortion definition, along with what the court said in the record, where it basically said, you know, yes, I do think there is an ex post facto problem potentially. It bought into the defendant's argument that the 2015 guidelines should apply. I think those two things combined really indicate where the district court was thinking, and the district court was sentencing the defendant under the 2015 guidelines. In fact... What if we can't tell, or I guess more to the point, what if we disagree? What if we think it's more likely that he was sentencing pursuant to the 2016 guidelines? Then what would we need to do? Would we ask you to go back and brief this for him so that he can understand that there was... Because it was not teed up to the district court, in fairness, and we sure don't know everything, so I don't know. We would expect him to be clairvoyant and know that there had been this change, which is a very significant change, particularly given that it's verbatim going to match up with And yes, I think if this court were to disagree with our position, and indeed I think defendant's position is that he was sentenced under 2015 as well, if the court were to be unclear on that, the fact still remains that the district court did not consider this amended extortion definition under the 2016 guidelines. So I think in either instance, the appropriate course would be to reverse and remand for resentencing, in which case the district court would have the benefit of briefing and really have the opportunity to really look at this issue, which is an issue of first impression in the District of Idaho. If we decide that it was a 2015 guideline that he was relying upon, then your argument is? Then my argument is that the district court got it wrong, because Idaho robbery is categorically a crime of violence under the 2015 guidelines. And I think where the district court went wrong is when it agreed with the district court that the police law had interpreted Idaho robbery in a way that made it broader than California robbery and no longer a crime of violence. I don't know how to pronounce it. Is it Beebe? I say Beebe, but Beebe... It's that case. You think he just read that incorrectly? I think so, yes, Your Honor, because Beebe explicitly says Idaho robbery requires intent to use force or fear to overcome the will of the victim. Now Beebe did not What the court did was it said there's sufficient evidence in the record to affirm the jury's finding that the defendant had the requisite intent in that case. But counsel, how about the language in that case that said fear and the force of fear may be created not merely by threatening words or gestures, but also by threatening circumstances. Doesn't that go beyond what the California courts have interpreted under the robbery statute? It does not, Your Honor. Why not? Because if we look at the generic definitions of robbery and extortion, which is the starting point for this analysis, generic robbery is defined as aggravated larceny containing at least the elements of misappropriation of property under circumstances involving immediate danger to the person. And generic extortion is obtaining something of value from another with his consent by the wrongful use of force, fear, and threats. So nothing in the language of those generic definitions places a limit on how the force or the fear can be created or what types of force or fear count. And I think tellingly, if we look at the Molinear case in which Judge Christin was a panel member recently, the court noted that putting in fear can be achieved by words, acts, or circumstances. And so that language in Beeb does not actually make Idaho robbery broader than California robbery or broader than the generic definitions of the offense. So counsel, the Knee case from Idaho, it found the elements of robbery were satisfied when the defendant wore a ski mask and kept his hand in his coat pocket. You think that's consistent with the threatening words or gestures language? Yes. I think the Knee case is actually helpful to us. Because what happened there was, again, they were reviewing a jury conviction. And they found that there was sufficient evidence in the record for the jury to find that the defendant wore a ski mask and kept his hand in his coat pocket. Now, compare that with California. A bodily injury, fear of violence as opposed to fear of damage to reputation or fear of . . . Is that your argument? No. I think both count. Because we're looking at both generic robbery and  And I'm just curious in that case whether reviewing the jury verdict is quite specific to the evidence that the jury heard, right? And it is, as Judge Fulton summarized. Yes. Yes, that's correct. And compare that to California robbery, which pretty much does require extortion because it does require that intent to use force or fear. Now, even assuming that the district court was right, and even assuming that Beebe somehow dispensed with that intent requirement, which I don't think it did because it says clearly in there that robbery requires intent to use force or fear, that would make Idaho robbery identical to California crime of violence. So under either interpretation, the district court got it wrong. California's statute was saved only because of the hybrid robbery extortion. That's correct. And so do we have a similar situation in the Idaho statutes where you can use the extortion robbery hybrid? Yes, we do. And this court has said both in Becerral and in Velazquez Bosque that it is okay to combine two enumerated generic offenses when both robbery and extortion are enumerated as crimes of violence. There's a split of authority under the new commentary definition of extortion, right? Courts have not agreed. Courts have not agreed. And I think our court hasn't weighed in. Our court has not weighed in. I believe that issue is teed up in the Nichols case, which is currently pending. And I do think that would be dispositive potentially under the 2016 guidelines. But again, the issue that we have raised in this appeal is whether the district court got it right in the 2015 guidelines. Does Nichols involve California statute? It does, yes. The current status of Nichols? I'm not aware. I don't believe there's been a decision. And I admit I don't know if oral argument has been held or not. Thank you. Good morning. May it please the Court. I'm Thad Blank from the Federal Defenders on behalf of Mr. Powell. Before I forget, Nichols, I believe, is scheduled for oral argument on the 18th, mid-month this month. But we didn't make this easy for the district court. But the district court ended up ruling that Mr. Powell did not have a conviction for a crime of violence on his record. The government, in this appeal, doesn't have an argument that the district court got that fundamental ruling wrong. And we agree with what the government said in an earlier appeal, that this court is reviewing the ruling, not the reasoning. It's not grading the district court's homework assignment. And so the government's claim that there's some sort of more exacting standard of review applied to this Amendment 798 argument is not correct. This Court can affirm for any basis in the record that's the difference between being the appellant and being lucky enough to be the appellee. You're not used to being on that side of the room. You like the view over there, don't you? I'm enjoying it in this circumstance because I frequently am in the position where the government has the opportunity to refine or improve their arguments on appeal. And this Court is allowed to consider that as long as that argument supports the ruling that the district court made below. Is any part of your argument going to rely on the district court's invocation of the rule of lenity? I don't think that this panel has to get there, no. I think the Amendment 798 argument is not, after the amendment, it's not close and the court doesn't have to invoke the rule of lenity. Although the Tenth Circuit case that we cited in our 28G later, that's how they view it as closer than I think it is. But it would leave unresolved the question of whether there's a match or not. And that is typically an on-off switch, it's a black or white, there's a match or there's not a match, right? It would be very peculiar for us to rely on that rule here. On the rule of lenity? Right, because it's a categorical approach, it's just a question of whether the conduct criminalized by the State of Idaho extends beyond. Not relying on that here? I didn't invoke it, I didn't cite it in any of my briefs, so no, I don't think I'm relying on it, I don't think I need to rely on it for this court to get where it's going. Which set of guidelines did the district court rely on, counsel? I don't think the district court specified because it wasn't material to the basis for its ruling. I think that the, I have to say that the government's argument that we cabined our argument to the 2015 guidelines is incorrect. The second argument that we made, this threatening circumstances argument, we viewed it and stated explicitly that that didn't depend on which version of the guidelines that they accept. So I point the court to ER 112, which is the conclusion of our first response to the government's objection. And I'm quoting, Idaho robbery does not categorically qualify as a crime of violence. That is true under the 2016 guidelines because, and then I'm excerpting, and then resuming quotation, this is even more true under the 2015 guidelines, dot, dot, dot. And so we were making two arguments. One was this convoluted argument that there was an ex post facto issue under the 2015 guidelines because robbery wasn't enumerated, it depended on the residual clause, Johnson had evaluated the residual clause. The district court rejected that argument. It said it was confident that Visceral Lopez applied, which, if it made that statement, it meant that it was considering both robbery in the commentary note and extortion factually listed. So it didn't buy that argument. Instead, it bought our other argument, which here we said applied regardless of which version of the guidelines the court adopted. And in another. So if we can't tell, excuse me for interrupting counsel, but if we can't tell which version, given the number of cases like delete, to be affected and the fact that under the new guideline there's this new definition of extortion, how do we go forward? I mean, this wasn't even briefed to the district court. Well, I think the district court correctly ruled in this court should affirm. And he didn't, but he didn't have this argument. As far as we can tell, the district court didn't have this argument to consider about the new definition of extortion. Well, it's a purely legal argument. We presented it on appeal as a reason to affirm and that the here the government chose not to engage with it. And typically this court requires a party to specifically and distinctly make an argument in order to adopt it. And so the government wrote in their brief that there should be an opportunity for further factual development of the record, but this isn't a factual question. I agree it's not a factual question, but it's a really important legal issue that would be precedential if we decide how this, and it would have been decided without the benefit of briefing. Well, I disagree that it's decided without the benefit of briefing. We briefed it. The government chose not to engage. And I think that if this court rules on it, it's it should do so or would it be appropriate to do so in a way that's not precedential beyond this case. This is just a matter of which argument doesn't work. Well, the government, the government doesn't work for us to say this ruling is for this case only, because if we make a ruling as a matter of law, it's the law of the circuit. Well, the ruling would be that the government did not choose to make the argument that under the 2016 guidelines, Idaho robbery remains a crime of violence. I see what you're saying. And so we say under those particular circumstances, they lose because they didn't make it. Does Nichols tease that argument up? Nichols tees it up in the context of California. And I think that that just highlights that the government made a choice here, that it didn't want to make the same argument. I mean, we cited it as a related case in our brief. Instead of making a similar argument, they just put in a footnote that they're not conceding the argument, but they also didn't make the argument. So why should they get credit for it? That's how you think we could cabin this ruling, just that the government hasn't engaged. The government has creating precedent where the district court didn't have the benefit of the briefing. It's not a rule. Yeah, it's not a ruling on the merits as litigated because it's not litigated. It's just a it's just a concession. And of course, this this court could do an unpublished disposition as well, which doesn't have presidential effect. But the one other thing. But sorry, but just to be clear, your position is you're not sure which set of guidelines the district court relied on. It's that I don't think the district court specified because I don't think it viewed it as material. I know the district court didn't specify counsel, but I'm just asking you, what is your position? I understand he didn't articulate it, but I guess my position is that it appeared that he was ruling under the 2016 guidelines because he didn't view there being an ex post facto issue with respect to which version of the guidelines applied. So he applied the law, which is you use the current version of the guidelines unless there's an ex post facto issue. After dismissing your argument that there was an that there was an ex post facto issue, he made his ruling without talking about the version of the guidelines. I would assume you follow the law in that respect. Thank you. Thank you. All right. Thank you, counsel. Thank you, Your Honor. Just two points. First of all, what version of the guidelines the district court applied is not at issue in this appeal. The defendant did not appeal that. And neither did we. As you have to. I mean, the defendant got what he wanted in a sense. So there's nothing for him to appeal. Well, so I think the only issue before this court, Your Honor, is whether or not the district court got it right under the 2015 guidelines. And I'd like to touch on how to apply the 2016 guidelines. It doesn't matter what the 2015 guidelines require. If the court got it right under the 2016 guidelines and if that's the guidelines the court was considering. Well, Your Honor, in the defendant's brief, he says the district court ruled Idaho robbery was not a crime of violence. As that term was defined by Section 4B 1.2 prior to Amendment 798, which essentially means the defendant is saying the district court applied the guidelines, the 2015 guidelines. He's saying that we went under the 2015 guidelines. I don't think he's necessarily locking himself into a position that depends upon the 2015 guidelines. Your Honor, and also I'd like to touch just on the defendant's proposal of this standard affirming on any ground in the record. That, I believe, is a civil standard. We would actually love for it to be criminal because in most cases we are the appellee and that would help us out quite a bit. But the reason why I think it's civil is if we look at Cortez Arias, which is the case the defendant cites for that standard, the court quotes the standard in a footnote, but really what the court does in Cortez Arias is it reviews de novo whether a crime of conviction is actually a crime of violence. Now, I traced the citation that the Cortez Arias case gave for that standard back four cases and each of those cases is, in fact, a civil case. And I found that to be the case with other cases in this circuit where that standard has crept into criminal cases. It seems that the court cites a civil case for the standard but really goes on to apply the relevant criminal standard. And so I submit that that's actually a civil standard and not applicable here. Even if it were the correct standard, Your Honor, there's no ground in the record for this court to affirm because there's no evidence that the district court considered the 2016 guidelines and specifically Amendment 798. There's no evidence in the record of what the district court would have done. Well, why couldn't we consider the amendment? That's purely a legal question, isn't it? It is, but again, like I mentioned— I mean, the district court was kind of begging for guidance from the Court of Appeals. Here we are. Yeah. Well, I think it's because that affirm on any ground in the record really is a civil standard and is not applicable here, although we would love for it to be applied in criminal cases. Put that aside. I mean, if our interpretation of the law is that as it stands now or under the 2016 guidelines— And we are capable of saying as a matter of law that because this definition isn't a categorical match to this definition, you don't have the predicate offense. What could the district court add to that? There's no factual findings to be made here, are there? Well, I think it's appropriate to send back to the district court. I'm fine. I'm happy to let him do the heavy lifting, but I don't know what it is he would decide that isn't going to be promptly appealed to us. So maybe we can make three of our colleagues deal with this question in a year, but how does the question change? And if you're telling me as best as we know, and I don't know, and I'm not trying to put words into your mouth, but if our court's going to consider that in a briefed fashion in Nichols, rather than send it back to the district court, why wouldn't we just sit here and wait for Nichols to tell us if this is a categorical match or not? Well, I think it's important to reverse the sentence in this case, because I think the district court very clearly got it wrong under the 2015 guidelines. Not so clear to me. I think it clearly got it wrong under the 2015 guidelines. But even if we would agree with you on that, if we know this other issue here is going to impact on the sentence, I'm really trying to figure out if there's a reason why we should send it back as opposed to either decide ourselves or let our colleagues in Nichols decide this other issue. Because if that's going to control the sentence, it really doesn't help anybody to recycle the case again, does it? I mean, if there's something the district court can add to that, I'd like to know it, but I don't see it yet. Well, I think the district court can add clarity and make a clear determination as to which version of the guidelines it's applying, and then make a decision whether it counts as a crime of violence under those guidelines. So I would ask that the court reverse and remand for resentencing. Thank you, Your Honor. Thank you, counsel. Thank you to both counsel for your helpful arguments in this case. The case just argued is submitted for decision by the court. The next case on calendar for argument is Brasley v. Fearless Ferris Service Stations.
judges: Rawlinson, Clifton, Christen